1

```
1                 UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
2                       ORLANDO DIVISION

3   - - - - - - - - - - - - - - -X
      UNITED STATES OF AMERICA,    :
4                                  :
                                   :   Case No.:
5            Plaintiff,            :   6:15-cr-226-Orl-41GJK
                                   :
6     vs.                          :
                                   :   Orlando, Florida
7     DANE GILLIS,                 :   May 28, 2020
                                   :   9:57 a.m.
8                                  :
             Defendant.            :
9   - - - - - - - - - - - - - - -X

10              TRANSCRIPT OF TELEPHONIC RESENTENCING
11            BEFORE THE HONORABLE CARLOS E. MENDOZA
                   UNITED STATES DISTRICT JUDGE
12

13
    APPEARANCES:
14
     Counsel for Plaintiff:        Emily C.L. Chang
15                                 Karen Gable

16   Counsel for Defendant:        Karla Reyes
                                   Adeel Bashir (via telephone)
17
                                   Defendant (via telephone)
18

19

20   Proceedings recorded by mechanical stenography.
     Transcript produced by computer-aided transcription.
21

22   Court Reporter:   Suzanne L. Trimble, CCR, CRR, RPR
                       Federal Official Court Reporter
23                     401 West Central Boulevard, Suite 4600
                       Orlando, Florida 32801
24                     e-mail: trimblecourtreporter@gmail.com

25
```

2

P R O C E E D I N G S

1

2      THE COURTROOM DEPUTY:  United States of America v.

3   Dane Gillis, Case No. 6:15-cr-226.

4      Counsel, please state your appearances for the

5   record.

6      MS. GABLE:  Good morning, Your Honor.  Karen Gable

7   on behalf of the United States.  I'm appearing with Emily

8   Chang and Agent Rod Hyre.  I would also note for the record

9   that the victim is present in the courtroom.

10      THE COURT:  All right.  Good morning.

11      MR. BASHIR:  Good morning, Your Honor.  This is

12   Adeel Bashir here on behalf of Mr. Gillis from the Federal

13   Defender's Office, and present in the courtroom is co-counsel

14   Karla Reyes, and Mr. Gillis is also on the line.

15      THE COURT:  All right.  Let's start with this.

16   Because of current circumstances, Mr. Gillis, you're appearing

17   telephonically.  I could create a circumstance where you could

18   appear in person, but I've been informed by counsel that it is

19   your desire to appear here this morning telephonically.  Is

20   that a fair representation of your position, Mr. Gillis?

21      THE DEFENDANT:  Yes, sir, it is.

22      THE COURT:  All right.  So we're going to move on

23   with the resentencing.  So we're all on the same page,

24   Mr. Gillis was found guilty by a jury as to three counts, the

25   three counts on the indictment.  When this case went up on

3

1    direct appeal, the Eleventh Circuit vacated the conviction as

2    to Count 2.

3            And I would be remiss if not acknowledging how well

4    written a dissenting opinion there was in that.  But two is

5    greater than one, so here we are.

6            That being the case, Mr. Gillis, you're here to be

7    sentenced on Counts 1 and 3.  Count 2 is gone now.  So is

8    anyone with Mr. Gillis at this time?

9            THE DEFENDANT:  Excuse me?

10           THE COURT:  So there's no need to put him under

11   oath, which I normally do.

12           MR. BASHIR:  I believe Mr. Gillis is by himself in a

13   conference room in the BOP facility.

14           THE COURT:  All right.  Is there anyone that can

15   acknowledge that or that the person on the phone is indeed

16   Mr. Gillis?  I don't independently recollect his voice.

17           THE DEFENDANT:  Do you want me to get my counselor?

18           THE COURT:  Does the Government have any concerns

19   about that at this time?  I mean, I'm ready to move forward,

20   if you want to.  I mean, he says he's Dane Gillis, but I guess

21   I can take his word for it.

22           MR. BASHIR:  Your Honor, this is Adeel Bashir of the

23   Federal Defender's Office.  If the Court would like, I've been

24   speaking with Mr. Gillis on the phone for the last four years

25   and can attest that this is his voice and what he sounds like,

4

1    if that's okay for the Government and the Court.

2          MS. GABLE:  So, Your Honor, with defense counsel's

3    representation that it is indeed Mr. Gillis on the other

4    end -- or on the phone, we would accept that.

5          THE COURT:  All right.  So as an officer of the

6    court, lead defense counsel has indicated that based on his

7    discussions repeatedly with Mr. Gillis over the last four

8    years that he is comfortable in representing to the Court that

9    this is indeed Mr. Dane Gillis on the phone at the Bureau of

10    Prisons' site appearing telephonically for a sentencing

11    hearing.

12          So, Mr. Gillis, on May 12th, 2016, a jury found you

13    guilty of Count 1 of the superseding indictment charging you

14    with enticement of a minor to engage in sexual activity in

15    violation of Title 18 U.S. Code, Section 2242 bravo; Count 2,

16    which charged you with soliciting another to commit the crime

17    of kidnapping in violation of Title 18 U.S. Code, Section 373;

18    and Count 3, which charged you with threatening communications

19    in violation of Title 18 U.S. Code, Section 875(c).  On

20    December 19, 2019, the Eleventh Circuit Court of Appeals

21    vacated the conviction as to Count 2.

22          We have now reach the stage in the proceedings where

23    it is my duty to address several questions to you, your

24    attorney, and counsel for the government.  And this is

25    specifically in reference to Counts 1 and 3.  Count 2 is now

5

1   gone.

2          Mr. Gillis, there was an amended presentence

3   investigation report prepared in anticipation of today's

4   resentencing hearing.  Have you had a chance to review that

5   with the advice of your attorney?

6          THE DEFENDANT:  Personally, no, I have not.

7          THE COURT:  So you've never seen the amended

8   presentence investigation report?

9          THE DEFENDANT:  No.

10          THE COURT:  All right.  Would defense counsel like

11  to comment on that?

12          MR. BASHIR:  Well, Your Honor, just to clarify, the

13  BOP facility precludes us from sending Mr. Gillis the PSR, but

14  Tuesday of this week, which was May 26th, I did have the

15  opportunity to speak with Mr. Gillis about the PSR.  So just

16  to clarify the question, I believe Mr. Gillis was

17  understanding if he's seen it itself, rather than just having

18  gone over it.  So we did have an opportunity to speak with him

19  about the PSR on Tuesday of this week.

20          THE DEFENDANT:  That's correct.

21          THE COURT:  All right.  Mr. Gillis, so your attorney

22  has made a representation to the Court that he -- although you

23  didn't read it, he's gone over it with you telephonically

24  earlier this week in preparation for today's sentencing

25  hearing.  Are you comfortable that you've had enough time to

6

1   talk to your attorney about the substance of this presentence

2   investigation report?

3             THE DEFENDANT:  Yes.

4             THE COURT:  Is it your request that, based on your

5   discussion -- and I don't want to know what you talked about

6   with your attorney -- but based on your discussions with your

7   attorney as to the substance of the presentence investigation

8   report, that you wish to move forward with sentencing here

9   today?

10            THE DEFENDANT:  Yes, sir.

11            THE COURT:  Would the Government like to be heard on

12  that?

13            MS. GABLE:  Your Honor, with the defendant's

14  representations, we think that we can move forward.

15            THE COURT:  All right.  We will move forward then.

16            So this question is for your attorney, Mr. Gillis.

17            Are there any defense objections to the factual

18  findings or the guideline calculations contained in the

19  amended presentence investigation report that you would like

20  to take up at this time?

21            MR. BASHIR:  This is Adeel Bashir.  No, Your Honor,

22  there are no legal objections to the guidelines calculations.

23  There were some clarifications to the factual representations

24  in the PSR.  They're not objections.  They're just

25  clarifications.  And I had attached our letter with our

1  sentencing memorandum.  I just wanted to be sure that that's

2  included with the PSR so that it would travel with Mr. Gillis

3  when he goes back to BOP, since the PSR is an important

4  document for his designation and other matters.

5          THE COURT:  I understand.

6          Are there any objections to the factual findings or

7  guideline calculations by the United States?

8          MS. GABLE:  There aren't, Your Honor.

9          THE COURT:  All right.  The Court is going to adopt

10  the undisputed factual statements and guideline applications

11  contained in the report.

12          All right.  I have notes from this trial.  I also

13  have my sentencing statement.  And I also have the transcript

14  available.  So I will indicate that I'm going to allow you

15  leeway to argue whatever you're going to argue, but primarily

16  my focus is going to be on what came forward at trial, along

17  with my notes and along with my conclusions that I relied upon

18  at the prior sentencing.  That's going to be the basis --

19  that's going to be what I'm going to rely on in terms of any

20  disputed factual statements between counsel.

21          The Court therefore determines that the advisory

22  guidelines are as follows:  Total offense level 38, criminal

23  history category I, the new guideline range is 235 to

24  293 months, five years to life for supervised release, no

25  restitution here, a 25,000 to $250,000 fine, and a $200

8

1    special assessment, $100 per count.

2         All right.  So I think there's going to be a lot

3    more evidence for the Court to consider before I hear

4    argument.  So let's start with the defense.  Is there any

5    additional -- and I know that both sides have filed sentencing

6    memoranda here.  So is there any additional evidence in

7    mitigation that the defense would like to present before I ask

8    the Government if they have any evidence in aggravation that

9    they would like to present?

10         MR. BASHIR:  This is Adeel Bashir, once again.  We

11   would point -- direct the Court to the amended PSR supplement,

12   which includes Mr. Gillis's medical history.  That's doc 174

13   in the record.  His medical history, there are excerpts of his

14   medical history from BOP that document is multiple heart

15   conditions and surgeries, as well as some of his other

16   underlying conditions.  And in addition to what we submitted

17   in our sentencing memorandum, those are the primary sources of

18   evidence that we'll be relying on in mitigation.

19         And one other thing I would note is, per the First

20   Step Act, the BOP now issues revised recidivism assessments on

21   behalf of all inmates and the initial report on Mr. Gillis --

22   it's available for all inmates -- is also something we've

23   referenced in our clarifications to the PSR.  So that's an

24   additional piece of evidence that we would submit for the

25   Court's consideration.

9

1          THE COURT:  Certainly will consider that.  And

2     you're referring to document 174, which is a 70-page

3     submission with a lot of medical information.  To the extent

4     that I can interpret it, I understand there are a lot of

5     medical and physical challenges that he's faced that are

6     documented in this 70-page attachment.  I will consider all of

7     that for the purposes of sentencing.  Is there any additional

8     evidence in mitigation you would like me to -- you would like

9     to present at this time before I hear from the United States?

10          MR. BASHIR:  No, Your Honor.  That was all.  Thank

11     you very much.

12          THE COURT:  All right.  And, Mr. Gillis, this is an

13     opportunity for you, if you would like to, to make a statement

14     to the Court that I certainly would consider before imposing

15     sentence here today.  Mr. Gillis, is there anything you would

16     like to say or you would like the Court to consider before I

17     hear from the United States?

18          THE DEFENDANT:  Yes, sir, Your Honor.

19          THE COURT:  All right.  Feel free to make your

20     statement.

21          THE DEFENDANT:  All right.  Thank you, Your Honor

22     for the opportunity to speak.  Being incarcerated has given me

23     ample time to reflect, search my conscious, and come to

24     understand the gravity of my actions, and I am extremely

25     remorseful for them.

10

1          The moment I walked into the compound of the

2    institution, I decided on putting my focus in becoming a

3    better person, not to be involved in any nonsense that would

4    inhibit my focus, or worry about my legal issues, I left that

5    to my attorneys.  I set out to improve myself mentally,

6    physically, and spiritually.  But the first thing I needed to

7    reconcile was to apologize to Ms. M.O., and that I am truly

8    very sorry for any fear or threat that she felt.  I truly

9    regret my actions.  Secondly, I needed to express to my family

10   how sorry I was for any shame I brought upon them and to thank

11   them for their undying support.

12          My time in custody has been terribly painful, both

13   mentally and physically, more than I could have ever imagined.

14   I kept busy by working in food service until my health issues

15   prevented me from continuing.  Since then, I've tutored fellow

16   inmates who are studying to become certified in ServSafe,

17   which is a management-level safety course offered here, for

18   which I used to teach in the past and have been certified

19   myself for over 20 years.

20          I've also tutored individuals who are working on

21   obtaining their GEDs, and I've spent a great deal of time

22   attending a weekly class with an outside volunteer on

23   religious studies, along with attending mass every two weeks

24   with a visiting priest.  I'm also a eucharistic minister

25   assisting the priest during the mass.

1          To say the least, these experiences have helped me

2    focus on becoming a better person.  It has given me the inner

3    strength to endure the mental and physical trials that I have

4    experienced, my surgery, my rehab, and my continuing health

5    issues, and also discerning my unlawful actions and to

6    apologize, once again, to Ms. M.O. for any pain or anguish

7    that I have inflicted on her.  I pray every day for an

8    increase of my hope, my faith, and my reconciliation to God

9    and to society.

10         Thank you again, Your Honor, for allowing me to

11   speak.

12         THE COURT:  All right.  Thank you for your

13   statement, Mr. Gillis.

14         The defense has indicated that they have no further

15   evidence in mitigation to present at this time.

16         Ms. Gable, will the United States be presenting any

17   evidence in aggravation for the Court to consider?

18         MS. GABLE:  Your Honor, we would be relying on our

19   memorandum and argument, but we do have a victim who would

20   like to make a statement to the Court.

21         THE COURT:  And will it be a sworn or an unsworn

22   statement?

23         MS. GABLE:  An unsworn statement, Your Honor.

24         THE COURT:  All right.  And we'll refer to the

25   victim by initials only in the transcript.  If she would be

12

1  kind enough to come to the podium, I certainly would like to

2  hear from her.

3         Come on forward, ma'am.  If you would just state

4  your initials and then you're certainly welcome to make your

5  statement.

6         THE WITNESS:  M.O.  I'm here today not because I

7  want to be, but I felt the need to be.  I want to be a

8  reminder of the person Dane Gillis intended to harm.  His

9  Craigslist ad was a planned attempt for, in his words, a

10 sadistic pervert to help him kidnap and rape me, not caring

11 what happened in the end.  His ill-intent in planning was

12 demonstrated in many ways, from asking me the route I take to

13 my mom's house to items found in his computer, like my iPhone

14 password.

15        Many times I'm reminded how fortunate I am.  When I

16 flip past a homicide investigation show, I realize it could be

17 my family that's being interviewed.  It's by the grace of God

18 and the diligent efforts of the F.B.I. I'm here today.  I

19 can't believe that he would have returned me home or released

20 me, if anything had gone his way.  In his words, he didn't

21 care what happened to me.

22        I would ask, Your Honor, to hold fast to the

23 original ruling.  Mr. Gillis was posting ads specifically

24 targeting me.  I ask not only for myself but for the safety of

25 other women who might come in his path.  My family and I seek

1   to close this chapter so we can continue to heal and move

2   forward.  Thank you.  M.O.

3          THE COURT:  Thank you, ma'am.  Feel free to be

4   seated in the courtroom.

5          Would the defense like to make a sentencing argument

6   at this time?

7          MR. BASHIR:  This is Adeel Bashir and, yes, Your

8   Honor, just briefly.

9          THE COURT:  Feel free to proceed.

10         MR. BASHIR:  Thank you very much.

11         Now, I know Your Honor just indicated that he has

12  notes from the prior proceedings and the prior sentencing, and

13  that's exactly what I want to focus on because in the original

14  trial and the original sentencing, there were really two

15  overarching concerns that drove the sentence in the first

16  instance, not only the seriousness of the offense and also the

17  risk that Mr. Gillis presents to society.

18         Now, we're very mindful of the fact that on remand

19  there's no changing of the facts, and we just heart Ms. M.O.

20  speak and Mr. Gillis speak as well, and they're both very

21  respectful of their positions.

22         But this is a very unique opportunity coming back on

23  remand and seeing what's changed.  And what's really changed

24  is the second half of that calculous, which is the risk factor

25  that Mr. Gillis presents to society.

1          So when we're really thinking about the length of

2     incarceration, again, we're not here to dispute the facts and

3     we're not here to dispute the seriousness of the offense, but

4     there really is a significant difference between what Your

5     Honor heard in that first sentencing and what we're presented

6     with today.  And the part that really sticks out and I would

7     really emphasize to the Court is at that first sentencing Your

8     Honor made a comment that you're not going to suspend your

9     common sense and listen to experts, when you know or feel or

10    believe that Mr. Gillis could potentially harm other people in

11    the future, and that was a very important part of Your Honor's

12    sentencing.

13          Well, I would make that same appeal to common sense

14    in light of Mr. Gillis's health issues and being incarcerated.

15    Four years in prison is a long time.  I've had an opportunity

16    to speak to Mr. Gillis regularly during those four years, and

17    the words that he told you are true.  And it's my advice to

18    him to forget about his legal issues and focus on himself.

19    That's precisely what he's done.  We've dealt with the legal

20    aspects.

21          He never knew that he would have an opportunity to

22    be back here again, but he is and he is after having gone

23    through significant heart issues.  In his doctor's own words,

24    he has difficulty ambulating, which essentially means he can

25    barely walk at times, and there's really no sight -- or end in

1  sight to his issues to the point of where he can't even have

2  dental surgery because he's not cleared on his heart issues.

3         So that common sense, which is what lends us to

4  believe what is the risk Mr. Gillis really presents to society

5  as a 63-year-old man now, having gone through significant

6  deterioration in his health, and at what point and how long do

7  we need to keep him incarcerated in order to protect the

8  public?  And I would just couple that with the fact that BOP

9  itself is now assessing recidivism and risk assessment, and it

10 places Mr. Gillis at a minimum level of recidivism.

11        And, again, at that first sentencing, one of the

12 important parts that the Court relied on and the Government

13 emphasized and indeed emphasizes now, was the aggravating

14 aspect of Mr. Gillis's conduct, that it was progressing over

15 time.  But now we've had a four-year gap where we've had a

16 de-escalation, his conduct of incarceration, and his

17 deteriorating health condition.  So when you put those two

18 things together and we're looking at the ranges of sentences,

19 one thing we stressed in the sentencing memorandum is that

20 even at the mandatory minimum Mr. Gillis would be at an age

21 that places him within the age of compassionate release

22 candidates.  And I think that's just an important policy point

23 to emphasize that as a matter of Congress and the way the

24 courts look at these matters, how long are we actually going

25 to keep someone incarcerated for their conduct?

1          I understand the seriousness mandates at least a

2    minimum of ten years and a 235-month low end of the guideline

3    range, but when we were looking at that 365 months that the

4    Court first imposed, I believe that there's significant change

5    in the calculous as far as the risk factor.  And I really just

6    ask the Court to lean and emphasize on that and rely on the

7    common sense aspect of a man in his 60s approaching his 70s,

8    when he's released from prison how much of a risk he'll

9    present to society then.

10          Thank you, Your Honor.

11          THE COURT:  All right.  Thank you.  Just one

12   clarification.  You used the word "feel" in describing words I

13   used at sentencing.  I was a little taken aback because I

14   don't use words like that.  So I want to read it into the

15   record because I have my statement.  I wrote it down and I

16   kept it.  What I said was, "I am not willing to suspend my own

17   common sense and experience to reach for a counterintuitive

18   conclusion just because a polygraph examination or an expert

19   seeks to lead me down a murky, illogical path."  So just to be

20   clear, that was my statement.

21          And I appreciate your argument, and I certainly will

22   take that into consideration.

23          Would the United States like to make a sentencing

24   argument at this time?

25          MS. GABLE:  We would, Your Honor.

1          THE COURT:  All right.  Ms. Gable, you're certainly

2     welcome to do so.

3          MS. GABLE:  Thank you, Your Honor.

4          Your Honor, as the Court knows, a sentence under the

5     Section 3553(a) factors must reflect the nature and

6     circumstances of the offense, the history and characteristics

7     of the defendant, and the need for the sentence imposed to

8     reflect the seriousness of the offense, to promote respect for

9     law, and to provide just punishment.  Your Honor, taking into

10    consideration all of those sentencing factors, a sentence of

11    365 months is a reasonable sentence.

12         We are asking the Court to upward vary under the

13    guidelines by two levels and to reimpose or sentence the

14    defendant -- not reimpose but to sentence the defendant to

15    365 months.

16         The only thing that has changed between the last

17    sentencing and this sentencing, Your Honor, is that the

18    guidelines no longer reflect the seriousness of the offense in

19    this case.  As the Court knows and as the Government has put

20    into its sentencing memorandum and as the Court heard from

21    M.O., the defendant committed an incredibly serious offense in

22    this case.  Not only did he attempt to entice a minor, an

23    11-year-old, to engage in sexual activity, he also was

24    soliciting individuals over the Internet to threaten and

25    injure M.O.

1          The amended guidelines, Your Honor, now no longer

2    reflect his conduct related to M.O.  The guidelines only are

3    based on his attempted enticement of a minor.  The guidelines

4    now, the offense of threatening to injure and kidnap M.O.,

5    that has not received any scoring at all in the guidelines,

6    because of the unitization rules, it's totally fallen out.  So

7    his base offense level is 38, which is what the base offense

8    level is for the attempted enticement of a minor.  So that

9    guideline range now no longer reflects any of the conduct that

10   this defendant inflicted upon M.O.  So that's why we are

11   asking the Court to upward vary by two levels and to sentence

12   the defendant to 365 months.

13          Regarding his history and characteristics, they

14   remain the same, Your Honor.  As we heard an expert testify,

15   he is sadistic.  He is a pedophile.  He has difficulty with

16   interpersonal relationships.  He has antisociality personality

17   issues.  And because of all of those combined and the fact

18   that he was 58 years old when he committed these horrid

19   offenses, he is a danger to the public.  He is a danger to

20   women.  He is a danger to children.

21          And he is a danger to M.O., Your Honor.  For

22   whatever reason, he fixated on her, and for seven months over

23   the Internet he was soliciting individuals to assist him in

24   kidnapping and injuring her.

25          Your Honor, he has heart issues, and we acknowledge

1    that, but as the defense counsel wrote in his sentencing

2    memorandum, Mr. Gillis had a documented history of diabetes

3    hypertension, hyperlipidemia, and coronary artery disease.  He

4    had all of those conditions.

5            THE COURT:  Can you turn the volume down?  All

6    right.  I apologize for that go on ahead.

7            MS. GABLE:  He had all of those conditions at the

8    time that he committed this offense, Your Honor.  None of

9    those conditions prevented him from committing these offenses

10   because, Your Honor, these offenses are ones he committed by

11   using a computer.  He sat behind a computer and he engaged in

12   all of this conduct that wreaked real havoc on M.O.'s life,

13   and he also attempted to entice a minor through Agent Hyre to

14   engage in sexual conduct.  So he had all of those issues, Your

15   Honor, when he committed this offense, and it didn't prevent

16   him.  The only thing that's changed is he's now had treatment

17   for those diseases.

18           And, Your Honor, with respect to he has atrial

19   fibrillation, Your Honor, millions of Americans have that

20   disease, and with proper treatment and medication and a

21   changed lifestyle, such as diet and exercise, they go on to

22   lead healthy and active lives.  So the fact that he's had

23   treatment or has coronary artery disease or atrial

24   fibrillation does not change the reasonableness of the

25   sentence in this case.  And it certainly doesn't outweigh all

20

1   of the other sentencing factors that this Court needs to

2   consider when imposing the sentence, like the seriousness of

3   the offense and the need to protect the public and the need to

4   impose just punishment for the sentence.

5          So, Your Honor, for all of those reasons, we ask the

6   Court to sentence this defendant to 365 months.

7          THE COURT:  The Court has asked the defendant why

8   judgment should not now be pronounced, and after hearing the

9   defendant's response, the Court has found no cause to the

10  contrary.  The parties have made statements in their own

11  behalf or have waived the opportunity to do so, and the Court

12  has reviewed the presentence report.

13         So you have to let these cases go and I did, but you

14  don't forget, and I was reminded what this case was about when

15  the opinion from the Eleventh Circuit came back.  I've been

16  looking through the file and reacquainted myself with what

17  this case was about.  And while I was able to let it go, sort

18  of like taking the plug out of a bathtub and letting the water

19  run out, I'm acutely familiar and aware of what this case was

20  about.

21         And just the worse thing -- one of the worse things

22  about this was the photo of M.O. being sent around.  Things

23  don't disappear once they're sent around electronically, and

24  there was testimony about that and that was horrible.

25         So this is the part of the statement that I read

1  that I still think is applicable here and I think is going to

2  drive the Court's decision.  I'm not going to go over all of

3  the lurid details, as the record is replete with examples of

4  what you wrote, said, and did.  The jury rejected your theory

5  of the case where you assert that the entirety of your conduct

6  was nothing more than role playing, void of any real intent to

7  engage in the conduct charged.

8       I think many of your supporters would be horrified

9  at the extent to which you exhibited a complete lack of

10 respect to your co-worker.  That lack of respect is appalling.

11 The terminology you sent complete strangers describing what

12 you wanted to do to your co-worker strikes a conscious.  And I

13 do recall quite clearly your dehumanizing of your former

14 co-worker at trial by referring to her as a MILF in front of

15 the jury.  I doubt you even noticed what you were doing at the

16 time.

17      While I am fully aware of your continued claim of

18 role playing, one, does one need to steal a security code to

19 post online pretending to be a co-worker in order to role

20 play; two, does someone need to post actual photos of a

21 co-worker online while soliciting strangers to kidnap and rape

22 the co-worker in order to role play; three, does someone go to

23 the effort of scheduling a kidnapping and rape during the time

24 period when the co-worker's husband would have been out of

25 town if they were just role playing; four, does someone drive

22

1  approximately one hour from Leesburg to Orlando, Florida,

2  under the premise of engaging in sex with a child, if they are

3  just role playing; and, five, does someone admit to the F.B.I.

4  that they masturbate at the thought of having sex with an

5  11-year-old, if they are just role playing?

6         I went on to say that I further reject the notion

7  that you never exposed your co-worker to actual danger.  That

8  was your claim at sentencing and at trial.  It took only a

9  minimal amount of effort, and by effort I mean the zoom button

10  on a computer, for the F.B.I. to determine your co-worker's

11  actual identity.  It was right there in the photo.

12         Further, the implication that the impact on your

13  co-worker was limited because she was unaware of the postings

14  until a later date is without merit.  She was in no less

15  danger, and the prospect of examining and reexamining every

16  past interaction with you, after she finally learned what you

17  had been doing right under her nose would rattle any person to

18  their core, and that hasn't changed considering the victim

19  M.O.'s presence here at trial.  This is just awful.

20         So the defense and the Government couldn't be

21  farther apart.  The defense is asking essentially for the

22  ten-year mandatory minimum on the resentence, and the

23  Government is asking that the Court impose the original

24  sentence, which is now an upward variance, of 365 months

25  because it's the Government's argument that although Count 2

23

1    is gone, the relevant conduct that came out at trial remains

2    the same.

3            Pursuant to Title 18, U.S. Code, Sections 3551 and

4    3553, it is the judgment of the Court that the defendant Dane

5    Gillis is hereby committed to the custody of the Bureau of

6    Prisons to be imprisoned for a term of 365 months.  That term

7    consists of 365 months as to Count 1 and 60 months as to

8    Count 3 to run concurrently.  Upon release from imprisonment

9    you shall serve a life term of supervised release.  This

10   consists of life as to Count 1 and a 3-year term of supervised

11   release as to Count 3 to run concurrently.

12           While on supervised release, you shall comply with

13   the standard conditions adopted by the court in the Middle

14   District of Florida.  In addition, you shall comply with the

15   following special conditions.

16           You shall participate in a mental health

17   treatment program specializing in sexual offender treatment

18   and submit to polygraph testing for treatment and monitoring

19   purposes.  You shall follow the probation officer's

20   instructions regarding the implementation of this court

21   directive.  Further, you shall contribute to the costs of such

22   treatment and/or polygraphs not to exceed an amount determined

23   reasonable by the probation officer based on the defendant's

24   ability to pay or the availability of third-party payment and

25   in conformance with the probation office's sliding scale for

24

1    treatment services.

2            You shall register with the state sexual offender

3    registration agency in any state where you reside, are

4    employed, carry on a vocation, or are a student, as directed

5    by the probation officer.

6            The probation officer shall provide state officials

7    with all information required under Florida sexual predator

8    and sexual offender notification and registration statutes

9    and/or the Sex Offender Registration and Notification Act and

10   may direct the defendant to report to these agencies

11   personally for any required additional processing, such as

12   photographing, fingerprinting, and DNA collection.

13           You shall have no contact with minors, a minor is

14   defined as a person under the age of 18, without written

15   approval by the probation officer and the defendant shall

16   refrain from entering into any area where children frequently

17   congregate, including but not limited to schools, daycare

18   centers, theme parks, playgrounds.

19           The defendant is prohibited from possessing,

20   subscribing to, or viewing, any images, video, magazines,

21   literature, or other materials depicting children in the nude

22   and/or in sexually explicit positions.

23           Without prior written approval from probation, the

24   defendant is prohibited from either possessing or using a

25   computer, including a smart phone, a hand-held computer

1  device, a gaming console, or an electronic device capable of

2  connecting to an online service or an internet service

3  provider.  This prohibition includes a computer at a public

4  library, an internet cafe, your place of employment, or an

5  educational facility.

6       Also, the defendant is prohibited from possessing an

7  electronic data storage medium, including a flash drive, a

8  compact disk, and a floppy disk, or using any data encryption

9  technique or program.  If approved to possess or use such a

10  device, the defendant shall permit routine inspection of the

11  device, including the hard drive and any other electronic data

12  storage medium, to confirm adherence to this condition.  The

13  United States probation officer must conduct the inspection in

14  a manner no more intrusive than necessary to ensure compliance

15  with this condition.  If this condition might affect a third

16  party, including your employer, you must inform the third

17  party of this restriction, including the computer inspection

18  provision.

19       The defendant shall submit to a search of his

20  person, residence, place of business, any storage units under

21  his control, computer or vehicle, conducted by the United

22  States probation officer at a reasonable time and in a

23  reasonable manner, based upon reasonable suspicion of

24  contraband or evidence of a violation of a condition of

25  release.  The defendant shall inform any other residents that

1   the premises may be subject to a search pursuant to this

2   condition.  Failure to submit to a search may be grounds for

3   revocation.

4           The defendant shall provide the probation officer

5   access to any requested financial information.

6           The defendant having been convicted of a qualifying

7   felony shall cooperate in the collection of DNA as directed by

8   probation.

9           The mandatory drug testing requirements of the

10  Violent Crime Control Act are imposed.  The Court orders the

11  defendant to submit to random drug testing not to exceed 104

12  tests per year.

13          Based on the financial status of the defendant, the

14  Court waives the imposition of a fine.

15          Forfeiture matters were handled previously.

16          It is further ordered the defendant shall pay a

17  special assessment of $200, which shall be due immediately.

18          The Court finds the defendant is indigent and will

19  waive the $5,000 special assessment pursuant to 18 U.S. Code,

20  Section 3014.

21          The Court having pronounced sentence, does counsel

22  for defendant have any objection to the sentence imposed or

23  the manner in which the Court imposed sentence, other than

24  those previously stated for the record?

25          MR. BASHIR:  Yes, Your Honor.  We would object.

1    Yes.  This is Adeel Bashir on behalf of Mr. Gillis.  We would

2    object to the substantive reasonableness of the sentence, and

3    I would also note for the record we would object procedurally

4    to the Court's emphasis or reliance on the relevant conduct in

5    light of Count 2 being vacated on the first appeal.

6            THE COURT:  All right.  The objection is noted and

7    preserved for the record.

8            Any objection from the United States?

9            MS. GABLE:  Your Honor, we would just note that the

10   relevant conduct here is the offense conduct that is in

11   Count 3, so it's actually directly applicable to the offense.

12           And we would ask the Court's judgment just to

13   reflect the forfeiture.  Since it's a new judgment, we need to

14   have that reflected in the judgment, please.

15           THE COURT:  I will do that.

16           MR. BASHIR:  Your Honor, this is Adeel Bashir,

17   again, if I could just make one comment about the designation,

18   in case I missed it on the phone, we did have the request that

19   Mr. Gillis, in light of his health issues, the Court make a

20   recommendation that he remain at FCI Greenville so he's able

21   to receive his medical treatment.

22           THE COURT:  I understand.  All right.

23           The defendant is hereby remanded to the custody of

24   the U.S. Marshal to await designation by the Bureau of

25   Prisons.

28

1        The request by defense will be granted, and that

2   will be reflected in the judgment and sentence.

3        The defendant has a right to appeal from the

4   judgment and sentence within 14 days from today's date.

5   Failure to appeal within that 14-day period shall constitute a

6   waiver of the defendant's right to appeal.  The Government may

7   also file an appeal from the sentence.

8        The defendant is also advised that he is entitled to

9   the assistance of counsel in taking an appeal.  And if he is

10  unable to afford a lawyer, one will be provided for him.

11       If he's unable to afford the filing fee, the clerk

12  of court will be directed to accept notice of appeal without

13  such fee.

14       Is there anything further from the United States?

15       MS. GABLE:  No, Your Honor.

16       THE COURT:  Mr. Bashir, anything further from the

17  defense?

18       MR. BASHIR:  No, Your Honor.

19       THE COURT:  All right.  Thank you, both.  Have a

20  good morning.

21       (WHEREUPON, this matter was concluded at 10:34 a.m.)

                            *   *   *

22                  CERTIFICATE OF REPORTER

23  I certify that the foregoing is a correct transcript of the
    record of proceedings in the above-entitled matter.

24

    _/s/ Suzanne L. Trimble_____            8/14/20
25  Suzanne L. Trimble, CCR, CRR, RPR             Date
    Official Court Reporter